**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

B. E. et al.,

                    Plaintiffs,

v.                                                    CIVIL ACTION NO.   2:11-cv-00679

MOUNT HOPE HIGH SCHOOL, et al.,

                    Defendants.


**MEMORANDUM OPINION & ORDER**

Pending before the court is the defendant West Virginia Department of Education's (the "Department") Motion to Dismiss Complaint for Failure to State a Claim [Docket 6].   For the reasons discussed below, this Motion is **GRANTED in part** and **DENIED in part**.

**I.      Background**

        A.      *Facts*

The plaintiff B.E. attended Mount Hope Middle School, where she was the captain of the school's cheerleading squad.   (Compl. [Docket 1], at 5.)   On November 12, 2010, she remained at the school to get cheerleading uniforms from the squad's cheerleading coach, Linda Nevi, who is a defendant in the instant action.   (*Id.*)   The plaintiff alleges that Ms. Nevi "took an inordinately long time in assembling the cheerleading uniforms," which resulted in B.E. "miss[ing] her regular school bus ride home."   (*Id.*)   Because she had missed the school bus and did not have a cell phone, B.E. claims that she went to Mount Hope's main office to use the phone to call her parents, but a staff member denied her request.   (*Id.*)   Eventually, B.E. claims she used

another student's cell phone to call home to inform her parents that she would get a ride from another student.   (*Id*. at 6.)

B.E. stayed in the school gymnasium as she waited for the end of the other student's basketball practice.   (*Id*.)   While she was in the gym, Mount Hope's basketball coach Bo Morrison, who is named as a defendant, informed her that she was not allowed in the gym during the practice, so she moved outside.   (*Id*.)   She claims that while waiting outside, she "was confronted by various male Mount Hope High School student athletes," ranging in age from sixteen to seventeen.   (*Id*.)   She also alleges that "one or more of the male athletes had exhibited misconduct in school" and "engaged in predatory and sexual behavior towards women in general and female students in particular" and that Mount Hope High School officials had received actual notice of these facts.   (*Id*.)   B.E. asserts that these students forced her into "a room commonly used by students at Mount Hope High School to engage in sexual acts."   (*Id*.)   While in the room, B.E. claims that the male students "raped and physically and sexually" assaulted her while another female was present in the room.   (*Id*. at 7.)

After the alleged attack, B.E. claims that she returned to the area outside the gym, and she told another student of the alleged attack.   (*Id*.)   The other student's mother made B.E. an appointment for a medical examination.   (*Id*.)   B.E. claims that all of the defendants were aware of her attack and "failed to recognize the rape and physical and sexual assault" and "failed to take prompt and effective remedial action calculated to prevent the reoccurrence of the act" and to create "a safe school environment."   (*Id*.)

B.      *Procedural History*

- 2 -

The plaintiff initiated the instant suit by filing a Complaint alleging claims for (1) negligent supervision; (2) negligence; (3) willful, wanton, and reckless conduct; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) violation of Title IX; and (7) violation of 42 U.S.C. § 1983.  The Department has moved to dismiss the Complaint [Docket 6]. This Motion is now ripe for review.

## II.    Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted

## Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading.  *Giarranto v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8.  As the Supreme Court reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'").  A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements.  *Iqbal*, 129 S. Ct. at 1949-50. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 1949 (quoting *Twombly*, 550

U.S. at 570).   To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise a claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"   *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 570.

## III.   Analysis

### A.   *Sovereign Immunity*

The Department has moved to dismiss the plaintiffs' claims based on sovereign immunity, claiming that it is immune from suit under Article 6, § 35 of the West Virginia Constitution. (Mem. Supp. Mot. to Dismiss [Docket 7], at 6.)   Specifically, the Department claims that the plaintiffs failed to plead that they were seeking to recover under and up to the limits of the state's insurance coverage.   Because the plaintiffs failed to plead that their recovery was limited to that available under the state's insurance policy, the Department claims that West Virginia Code § 29-12-5 does not apply and the claims are barred by sovereign immunity.   (*Id*. at 8.)

In response, the plaintiffs allege that the Department is not immune from suit because the Department carried insurance against such acts.   (Pl.'s Mem. Supp. Resp. to Def.'s Mot. to Dismiss [Docket 13], at 6.)   They also claim that the Department is not entitled to sovereign

immunity because prior to the incident, the Department "declared a state of emergency with regard to Fayette County and appointed the Fayette County Board of Education's Superintendent."   (*Id*.) Finally, the plaintiffs assert that the Department is not immune because the West Virginia Supreme Court of Appeals ("WVSCA") "has determined that immunity was not afforded to a board of education for failing to supervise a child after school."   (*Id*.)

Article 6, § 35 of the West Virginia Constitution provides:   "The State of West Virginia shall never be made defendant in any court of law or equity[.]"   W. VA. CONST. art. VI, § 35. The WVSCA has held that this grant of sovereign immunity also extends to state agencies and instrumentalities.   *See Parkulo v. W. Va. Bd. of Probation & Parole*, 199 W. Va. 161, 168 (1997). Although the state is entitled to sovereign immunity, the West Virginia Legislature has "authorized the purchase of liability insurance providing coverage of State 'property, activities and responsibilities.'"   *Id*. (quoting Ch. 96, Acts of the Legislature, 1957; W. VA. CODE § 29-12-5). West Virginia Code § 29-12-5 provides that "The board [of risk and insurance management] has, without limitation and in its discretion as it seems necessary for the benefit of the insurance program, general supervision and control over the insurance of state property, activities and responsibilities, including . . . [t]he acquisition and cancellation of state insurance."   W. VA. CODE § 29-12-5(a)(1).

The WVSCA addressed the relationship between the Legislature's authorization of the purchase of liability insurance coverage and state sovereign immunity in *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W. Va. 743 (1983).   In *Pittsburgh Elevator*, the WVSCA stated that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the

traditional constitutional bar to suits against the State." *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 744 syl. pt. 2 (1983).   The WVSCA went on to say that when a plaintiff seeks to recover "against the State's liability insurance coverage, the doctrine of constitutional immunity, designed to protect the public purse, is simply *inapplicable*." *Id*. at 756 (emphasis added).

Because state sovereign immunity is inapplicable when the plaintiffs' recovery is limited to that allowed under the insurance policy, the WVSCA requires that "the pleadings should state that qualification, limiting the relief sought to the coverage actually provided by the applicable insurance policies." *Id*; *see also Johnson v. C.J. Mahan Constr. Co.*, 210 W. Va. 438, 441 n.4 (2001) ("[F]uture litigants should adhere to the requirement this court announced in *Parkulo*."). To enforce this rule, the WVSCA has also stated that it "will not review suits against the State brought under the authority of W. Va. Code § 29-12-5 unless it is alleged that the recovery sought is limited to the applicable insurance coverage and the scope of the coverage and its exceptions are apparent from the record." *Id*. at 170.

The plaintiffs have brought suit against the Department, but in their pleading, they failed to limit the relief they seek to that available under the state's insurance policy.   A plaintiff can only establish a plausible claim against a state department if the claim seeks relief up to and under the limits of the state's insurance policy.   This is because, as explained above, the plaintiff must limit its damages up to and under the limits of the state's insurance policy otherwise sovereign immunity bars the claim.   Sovereign immunity differs from other defenses in that it cannot be waived and the state does not have to raise it at trial for the court to consider it on appeal.   *See Skaff v. K.T. Pridemore*, 200 W. Va. 700, 704-05 (1997).   Only by limiting the relief sought in its

pleading does the plaintiff make sovereign immunity inapplicable.

Because the plaintiffs failed to limit the relief they seek in their Complaint, the doctrine of sovereign immunity bars their claims and they have failed to establish a plausible claim for relief. *See* FED. R. CIV. P. 8(a). Accordingly, the court **GRANTS** the West Virginia Department of Education's Motion to Dismiss as to the plaintiffs' claims for (1) negligent supervision; (2) negligence; (3) willful, wanton, and reckless conduct; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. The court **ORDERS** the plaintiffs' claims for negligent supervision; negligence; willful, wanton, and reckless conduct; intentional infliction of emotional distress; and negligent infliction of emotional distress to be **DISMISSED without prejudice**.

B.      *§ 1983 Claim*

The plaintiffs' Complaint includes a claim against the Department for "violation of 42 U.S.C. § 1983." (Compl. [Docket 1], at 14.) The Department moved to dismiss this claim, asserting that it was barred by the Eleventh Amendment because the Department is not a "person" capable of being sued. (Def.'s Mem. Supp. Mot. to Dismiss [Docket 7], at 16.) In their response to the Department's Motion to Dismiss, the plaintiffs stipulate that the Department "is not liable for claims pursuant to 42 U.S.C. § 1983." (Pl.'s Mem. Supp. Resp. to Def.'s Mot. to Dismiss [Docket 13], at 13.) Accordingly, the court **GRANTS** the Department's Motion to Dismiss as to the plaintiffs' § 1983 claim.

C.      *Claim Arising Under Title IX*

The plaintiffs have also brought a claim asserting that the Department violated Title IX, 20 U.S.C. § 1681 *et seq*. They allege that the Department violated Title IX: (1) when it "fail[ed] to

notify Plaintiff B.E. that her rape and sexual assault were covered by Title IX," (2) "for being deliberately indifferent to the rape and physical and sexual assault of Plaintiff B.E., and for their intentional failure to protect Plaintiff B.E. from further harassment and humiliation," and (3) "for failing to take prompt and effective remedial action in response" to the alleged attack on B.E. (Compl. [Docket 1], at 12-13.)

The Department has moved to dismiss this claim on several grounds.  First, the Department asserts that the claim is barred by the Eleventh Amendment and by Article 6, § 35 of the West Virginia Constitution.  (Def.'s Mem. Supp. Mot. to Dismiss [Docket 7], at 5-7.) Second, the Department alleges that the plaintiffs have "fail[ed] to state sufficient facts to support a cause of action for harassment or discrimination" pursuant to Title IX.  (*Id.* at 14.)  Third, the plaintiffs assert that the Department is not entitled to immunity under the Eleventh Amendment because the state waived its immunity when it received Title IX funding.  (Pl.'s Resp. to Def.'s Mot. to Dismiss [Docket 13], at 4-5.)  The plaintiffs also claim that they pled sufficient facts to support their Title IX claim because they claim that B.E.'s alleged attackers "had a history of sexual misconduct towards students," there were unsupervised areas of the school, and because the sexual assault "occurred in a known 'sex room'" at the school.  (*Id.* at 12.)

1.    *Eleventh Amendment Immunity*

The Eleventh Amendment bars naming a state as a defendant.  *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).  There are exceptions to the Eleventh Amendment's prohibition on suits against states.  *Litman v. George Mason Univ.*, 186 F.3d 544, 549 (4th Cir. 1999).  One exception to a state's Eleventh Amendment immunity is that a state may consent to suit in federal court.  *Id.* at 550.  A state may "waive its immunity by voluntarily participating in federal

spending programs when Congress expresses 'a clear intent to condition participation in the programs . . . on a State's consent to waive its constitutional immunity.'" *Id.* (quoting *Booth v. Maryland*, 112 F.3d 139, 145 (4th Cir. 1997)).   With regard to Title IX, Congress has provided that:  "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for violation of . . . title IX of the Education Amendments of 1972 . . . ."  42 U.S.C. § 2000d-7(a)(1).   The Fourth Circuit has found that "any state reading § 2000d-7(a)(1) in conjunction with 20 U.S.C. § 1681(a) would clearly understand the following consequences of accepting Title IX funding:  '(1) the state must comply with Title IX's antidiscrimination provisions, and (2) it consents to resolve disputes regarding alleged violations of those provisions in federal court.'"  *Litman*, 186 F.3d at 554.   Thus, a state that receives Title IX funding has waived its sovereign immunity in disputes concerning alleged violations of Title IX.   Because the Department receives federal funding, it has consented to suits concerning alleged Title IX violations in federal court.

2.   *Intervention into Fayette County School District*

The plaintiffs argue that the Department is liable for Title IX violations because it assumed the liabilities of the Fayette County Board of Education when it "declared a state of emergency with regard to Fayette County" schools.   (Pl.'s Resp. to Def.'s Mot. to Dismiss [Docket 13], at 7.) In response, the Department claims that the plaintiffs confuse the West Virginia Department of Education and the West Virginia Board of Education (the "State Board") in their Response to the Motion to Dismiss.   (Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss [Docket 14], at 5.)   The Department argues that the State Board intervened in the Fayette County School District and that the Department was not the state agency that carried out the intervention.   (*Id.*)   Because the

State Board intervened in the Fayette County schools, the Department argues that the Department's involvement in the intervention was only "the State Superintendent's limited actions in accordance with the West Virginia Board of Education directives."   (*Id*. at 7-8.)

To determine the Department's possible role in the intervention into the Fayette County school district, it is necessary to outline the organization of West Virginia's educational system. West Virginia's state educational system is around two constitutional bodies:   the West Virginia Board of Education and the West Virginia State Superintendent of Education (the "State Superintendent").   West Virginia also has a Department of Education (the "Department") that is established by statute for the purpose of assisting the State Superintendent in carrying out his or her duties.

The West Virginia Board of Education was established in Article 12, § 2 of the West Virginia Constitution, which states that "The general supervision of the free schools of the State shall be vested in the West Virginia board of education which shall perform such duties as may be prescribed by law."   W. VA. CONST. art. XII, § 2.   The West Virginia Legislature has assigned duties to the State Board, including "general supervision of the public schools of the state" and mak[ing] rules . . . relating to standards for performance and measures of accountability, the physical welfare of pupils, [and] the education of all children of school age."   W. VA. CODE § 18-2-5.   Similarly, the West Virginia Constitution created the position of the State Superintendent.   Article 12, § 2 of the West Virginia Constitution outlines the State Superintendent's duties, stating "He shall be the chief school officer of the State and shall have such powers and shall perform such duties as may be prescribed by law."   W. VA. CONST. art. XII, § 2.   The West Virginia Legislature provided that the State Superintendent will have "general

supervision of the free schools of the state" and will be the state board of education's chief executive officer.   W. VA. CODE § 18-3-3.   To assist the State Superintendent in carrying out his duties, the Legislature has provided for the State Superintendent to create the West Virginia Department of Education.   W. VA. CODE § 18-3-9.

Based on the structure of the West Virginia state educational system, the State Superintendent and the Department should be treated as one entity for purposes of determining liability.   This determination is based on the fact that the Department was established by the State Superintendent for the purpose of helping him carry out his constitutional duties.   *See id*.   The legislatively-created Department of Education is an arm of the constitutionally-created State Superintendent of Education.   This conclusion is bolstered by the fact that the State Board, the Department, and the State Superintendent are all the state of West Virginia.   Suits against the State Board, the Department, and the State Superintendent are actually suits against the State of West Virginia, which usually give rise to sovereign immunity.   Additionally, West Virginia courts have treated the Department and the state superintendent as one entity.   *See, e.g.*, *Watkins v. McDowell Cnty. Bd. of Educ.*, No. 11-0420, 2012 WL 2226446, at *4 n.7 (W. Va. June 13, 2012) ("[A]t all times relevant, the State Superintendent of Schools made all personnel hiring and termination decisions in the McDowell County school system.   Accordingly, the West Virginia Board of Education and the West Virginia Department of Education are named parties herein."); *State ex rel. Stewart v. Alsop*, 207 W. Va. 430, 431 (2000) ("David Stewart, State Superintendent of Schools, and the West Virginia Department of Education, petitioners herein and defendants below (hereinafter collectively referred to as 'State Superintendent') . . . .").   Thus, this court will treat the Department and the State Superintendent as a single entity.

- 11 -

Because the Department and the State Superintendent are treated as one entity, the court must consider the powers granted to the State Superintendent when determining the Department's role in Fayette County.   The powers granted to the State Superintendent when the State Board authorizes the takeover of a county board are extensive and make the plaintiffs' claim against the Department plausible on its face.   When the State Board takes over a county school system, the State Board effectively has total control over the county school system.   *See Workman*, 667 F. Supp. 2d at 686.   Takeovers of county schools systems are conducted pursuant to West Virginia Code § 18-2E-5(p)(4)(C).   The takeover statute provides the State Board with extensive powers over the county school system.   *See Workman*, 667 F. Supp. 2d at 687.   The State Board's powers exceed even the ones specifically outlined in the statute because the statute itself states that the State Board's intervention need not be limited to the listed powers.   *See id.*

Even limiting the court's analysis to the powers specifically listed in the takeover statute, the statute grants the State Superintendent extensive responsibilities during a takeover.   The State Board has broad power to delegate tasks to the State Superintendent.   These tasks include the power to terminate and hire administrators and principals in the school system, to conduct hearings and make decisions regarding personnel matters, and to conduct hearings and issue decisions regarding school closures or consolidations.   *See* W. Va. Code § 18-2E-5(p)(4)(C).

Because the State Superintendent possessed broad authority over the Fayette County school system due to the takeover and because the State Superintendent and the Department are effectively one entity, the Department possessed extensive powers over the Fayette County school system.   The Department had broad decision-making authority over personnel decisions in the county and over rules at the county schools.   Further, the Department possessed broad authority

over the administrators and principals in the Fayette County schools, the very individuals named in the instant suit for their alleged actions leading up to and in response to the incident involving B.E. Thus, the court **FINDS** that the plaintiffs have pled sufficient facts to establish that it is plausible that the Department was involved in the relevant decisions at the Fayette County Board of Education.

        3.     *Sufficiency of Title IX Claim Under Rule 8*

The next issue that the court must address concerns whether the plaintiffs have pled sufficient facts to state a plausible claim against the Department.   Title IX states that:   "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."   20 U.S.C. § 1681(a).   Title IX may be enforced by "an implied private right of action" and "monetary damages are available in the implied private action."   *Carroll K. v. Fayette Cnty. Bd. of Educ.*, 19 F. Supp. 2d 618, 621 (S.D. W. Va. 1998).

A school may be liable under Title IX for student-on-student harassment in certain circumstances.   *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639 (1999).   Specifically, the U.S. Supreme Court has held that a school may be liable in cases of student on student harassment "where the [school] is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority."   *Id*. at 646-47.   The student-on-student harassment must be "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."   *Id*. at 651. "[F]unding recipients are properly held liable in damages only where they are deliberately

indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."   *Id.* at 650.   In sum, to establish a claim under Title IX for student-on-student harassment against a school district, the plaintiff must demonstrate that the school district:   (1) "had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit,' and (5) the district was deliberately indifferent to the harassment."   *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

In this case, the Department asserts that the plaintiffs failed to plead sufficient facts to establish a plausible claim against the Department under Title IX.   The Complaint alleges that B.E. was sexually assaulted and raped while at Mount Hope High School and asserts that the Department's and the other defendants' actions before and after the attack violated Title IX. (Compl. [Docket 1], at 6-7.)   Concerning the Department's actions before the alleged attack, the Complaint alleges that the attack occurred in "a room commonly used by students . . . to engage in sexual acts," and that officials at Mount Hope had received "actual notice" that one or more of B.E.'s alleged attackers "had exhibited misconduct in school and also exhibited and engaged in predatory and sexual behavior towards women in general and female students in particular."   (*Id.* at 6.)   The plaintiffs also claim that the defendants failed to properly supervise the school grounds, which contributed to the attack.   (*Id.* at 7.)   The Complaint alleges that after the attack occurred, the defendants failed to recognize the alleged attack on B.E. and "failed to take prompt and

- 14 -

effective remedial action calculated to prevent reoccurrence of the act and to set forth a safe school environment" in compliance with Title IX. (*Id*.) The defendants also intentionally failed "to protect Plaintiff B.E. from further harassment and humiliation." (*Id*. at 13.) As a result of the attack and the defendants' alleged failure to take remedial action, the plaintiffs claim that B.E. could not return to her classes and had to enroll in another school district. (*Id*. at 8.) The court **FINDS** that these factual allegations are sufficient to allow the court to draw a reasonable inference that the Department is liable under Title IX and the Title IX claim is plausible on its face. *See Iqbal*, 129 S. Ct. at 1949-50. Accordingly, the Department's Motion to Dismiss as to the plaintiffs' Title IX claim is **DENIED**.

## IV.    Conclusion

For the reasons discussed above, the Department's Motion to Dismiss is **GRANTED in part** as to the state law claims and § 1983 claim and **DENIED in part** as to the Title IX claim. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       August 17, 2012

Joseph R. Goodwin, Chief Judge

- 15 -