IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

B. E. et al.,

        Plaintiffs,

v.                                          CIVIL ACTION NO.   2:11-cv-00679

MOUNT HOPE HIGH SCHOOL, et al.,

        Defendants.


MEMORANDUM OPINION & ORDER

Pending before the court are the Motion to Dismiss by the defendants Leah Hutchins, Mike Hutchins, Bo Morrison, Mount Hope High School, Linda Nevi, and the Board of Education of Fayette County, West Virginia [Docket 17] and the Motion to Strike Plaintiffs' Late Filed Response in Opposition [Docket 22].   For the reasons discussed below, the defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part** and the defendants' Motion to Strike is **DENIED**.

I.      **Background**

      A.    *Facts*

The plaintiff B.E. attended Mount Hope Middle School, where she was the captain of the school's cheerleading squad.   (Compl. [Docket 1], at 5.)   On November 12, 2010, she remained at the school to get cheerleading uniforms from the squad's cheerleading coach, Linda Nevi, who is a defendant in the instant action.   (*Id*.)   The plaintiff alleges that Ms. Nevi "took an inordinately long time in assembling the cheerleading uniforms," which resulted in B.E.

"miss[ing] her regular school bus ride home."   (*Id*.)   Because she had missed the school bus and did not have a cell phone, B.E. claims that she went to Mount Hope's main office to use the phone to call her parents, but a staff member denied her request.   (*Id*.)   Eventually, B.E. claims she used another student's cell phone to call home to inform her parents that she would get a ride from another student.   (*Id*. at 6.)

B.E. stayed in the school gymnasium as she was waiting for the end of the other student's basketball practice.   (*Id*.)   While she was in the gym, Mount Hope's basketball coach Bo Morrison, who is named as a defendant, informed her that she was not allowed in the gym during the practice, so she moved outside.   (*Id*.)   She claims that while waiting outside, she "was confronted by various male Mount Hope High School student athletes," ranging in age from sixteen to seventeen.   (*Id*.)   She also alleges that "one or more of the male athletes had exhibited misconduct in school" and "engaged in predatory and sexual behavior towards women in general and female students in particular" and that Mount Hope High School officials had received actual notice of these facts.   (*Id*.)   B.E. asserts that these students forced her into "a room commonly used by students at Mount Hope High School to engage in sexual acts."   (*Id*.)   While in the room, B.E. claims that the male students "raped and physically and sexually" assaulted her while another female was present in the room.   (*Id*. at 7.)

After the alleged attack, B.E. claims that she returned to the area outside the gym, and she told another student of the alleged attack.   (*Id*.)   The other student's mother made B.E. an appointment for a medical examination.   (*Id*.)   B.E. claims that all of the defendants were aware of her attack and "failed to recognize the rape and physical and sexual assault" and "failed to take

prompt and effective remedial action calculated to prevent the reoccurrence of the act" and to create "a safe school environment." (*Id.*)

      B.    *Procedural History*

The plaintiffs initiated the instant suit by filing a Complaint alleging claims for (1) negligent supervision; (2) negligence; (3) willful, wanton, and reckless conduct; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) violation of Title IX; and (7) violation of 42 U.S.C. § 1983. The defendants Leah Hutchins, Mike Hutchins, Bo Morrison, Mount Hope High School ("Mount Hope"), Linda Nevi, and the Board of Education of Fayette County, West Virginia ("the Fayette Board"), have moved to dismiss the Complaint [Docket 17]. This Motion is now ripe for review.

## II.    Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted

## Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarranto v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to

dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual

allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the

elements of a cause of action supported by conclusory statements. *Iqbal*, 129 S. Ct. at 1949-50.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550

U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to

draw the reasonable inference that the defendant is liable, and those facts must be more than

merely consistent with the defendant's liability to raise a claim from merely possible to probable.

*Id.*

In determining whether a plausible claim exists, the court must undertake a

context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

A complaint must contain enough facts to "nudge[] [a] claim across the line from conceivable to

plausible." *Twombly*, 550 U.S. at 570.

**III.     Analysis**

        A.      *Claims Against the Fayette County Board of Education*

                1.      *Eleventh Amendment Immunity as to State Law Claims*

The Fayette Board has moved to dismiss the plaintiffs' claims, arguing that it is an arm of

the state of West Virginia, and thus immune from suit pursuant to the Eleventh Amendment.

(Defs.' Mem. Supp. Mot. to Dismiss [Docket 18], at 4.) The Fayette Board asserts that it is an

arm of the state because the West Virginia State Board of Education (the "State Board") intervened

in the Fayette County school system.   (*Id*. at 4-5.)   Because the State Board took over the Fayette County schools, the Fayette Board claims that it is a state agency and entitled to Eleventh Amendment immunity.   (*Id*.)

In response, the plaintiffs argue that the "extent of the State Department of Education's control over the Fayette County Board of Education has yet to be determined," and any determination that the Fayette Board is an arm of the state is premature.   (Pls.' Resp. to Defs.' Mot. to Dismiss [Docket 20], at 8-9.)   The plaintiffs also argue that there is disagreement as to the "extent and nature of the 'degree of control'" that West Virginia exercised over the Fayette Board. (*Id*. at 8.)   Finally, the plaintiffs claim that West Virginia is not entitled to sovereign immunity because they allege that it carried insurance covering the alleged acts.   (*Id*. at 5.)

The Eleventh Amendment states that:   "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI.   This amendment prohibits suits by a citizen of a state against that state. *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).   Under the Eleventh Amendment, plaintiffs are precluded from naming an arm of the state as a defendant.   *See, e.g.*, *Westinghouse Elec. Corp. v. W. Va. Dep't of Highways*, 845 F.2d 468, 469 (4th Cir. 1988) ("[A] claim against the West Virginia Department of Highways is, for eleventh amendment purposes, properly considered one against the state itself.").   The Amendment applies to state law claims and federal claims.   *Id*. ("Because the eleventh amendment is a jurisdictional limitation on the power of the federal courts, it applies to claims based, as is this one, on state rather than federal law.").

This court must determine whether the Fayette Board is entitled to sovereign immunity under the Eleventh Amendment.  This determination depends on whether the State Board is immune from suit under the Eleventh Amendment and on the relationship between the state and county boards.   As an initial matter, the State Board is an arm of the state of West Virginia.  *See Workman v. Mingo Cnty. Schs.*, 667 F. Supp. 2d 679, 685 (S.D. W. Va. 2009).   Thus, the State Board is entitled to immunity from suit pursuant to the Eleventh Amendment.

When a county board of education is taken over by the state board of education pursuant to West Virginia Code § 18-2E-5, the county board of education becomes an arm of the state and is entitled to the Eleventh Amendment immunity afforded to the state.  *See id.*   This principle was recognized in *Workman v. Mingo County Schools*, 667 F. Supp. 2d 679 (S.D. W. Va. 2009).   In *Workman*, this court found that § 18-2E-5 granted the State Board such broad powers that application of the Fourth Circuit's factors to determine whether an entity is an arm of the state directed that the court's conclusion that the county board was an arm of the state.  *See id.* at 685-87.   The plaintiff in that case claimed that the Mingo County Board of Education's mandatory immunization program violated her and her minor child's First, Fifth, and Fourteenth Amendment rights.  *See Workman*, 667 F. Supp. 2d at 683.   At the time of the alleged constitutional violations, the Mingo County Schools had been taken over by the State Board, and this court found that the takeover caused the Mingo County Board to become an arm of the state of West Virginia, and thus it was immune under the Eleventh Amendment.  *See id*. at 685-87.   Similarly, in this case, the State Board took over the Fayette County Board, and thus the Fayette County Board is entitled to Eleventh Amendment immunity.

The plaintiffs also argue that the Fayette Board waived any sovereign immunity by acquiring an insurance policy against the alleged acts. *See Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 744 syl. pt. 2 (1983); *see also Parkulo v. W. Va. Bd. of Probation & Parole*, 199 W. Va. 161, 170 (1997). In the accompanying order addressing the Department's Motion to Dismiss, this court found that a plaintiff can only state a plausible claim against a state department if the claim seeks relief up to and under the limits of the state's insurance policy. In this case, § 29-12A-5's waiver of immunity under the West Virginia Constitution is not applicable because in their Complaint, the plaintiffs did not seek damages up to and under the limits of the state's insurance policy. *Cf. Parkulo*, 199 W. Va. at 170. Thus, § 29-12A-5 does not make sovereign immunity inapplicable to the claims against the Fayette Board.

In sum, the court **FINDS** that the Fayette County Board of Education is an arm of the state of West Virginia and is protected from suit under the Eleventh Amendment. Accordingly, the court **GRANTS** the Fayette Board's Motion to Dismiss as to the state law claims for (1) negligent supervision; (2) negligence; (3) willful, wanton, and reckless conduct; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. The court **ORDERS** the plaintiffs' claims for negligent supervision; negligence; willful, wanton, and reckless conduct; intentional infliction of emotional distress; and negligent infliction of emotional distress to be **DISMISSED without prejudice**.

2.     *Title IX Claim*

The plaintiffs also brought a claim against the Fayette Board asserting that it violated Title IX, 20 U.S.C. § 1681 et seq. They allege that the Fayette Board violated Title IX: (1) when it "fail[ed] to notify Plaintiff B.E. that her rape and sexual assault were covered by Title IX," (2) "for

being deliberately indifferent to the rape and physical and sexual assault of Plaintiff B.E., and for their intentional failure to protect Plaintiff B.E. from further harassment and humiliation," and (3) "for failing to take prompt and effective remedial action in response" to the alleged attack on B.E. (Compl. [Docket 1], at 12-13.)

The Fayette Board's Motion to Dismiss seeks the dismissal of the Title IX claim because it asserts that the Fayette Board is immune from suit under the Eleventh Amendment. This court found in the companion Memorandum Opinion and Order deciding the Department's Motion to Dismiss that the Department had waived its Eleventh Amendment immunity from suit under Title IX by accepting federal funds. Similarly, it cannot be fairly disputed that the State Board accepts federal funding, and thus has waived its Eleventh Amendment immunity for claims brought pursuant to Title IX. The Fayette Board's Eleventh Amendment immunity is conterminous with the State Board's immunity. Because the State Board has waived its Eleventh Amendment immunity as to Title IX claims, the Fayette Board is not entitled to Eleventh Amendment immunity for the plaintiffs' claim brought pursuant to Title IX. Thus, the court **FINDS** that the Fayette Board is not immune under the Eleventh Amendment for a claim brought pursuant to Title IX.

The next issue that the court must address concerns whether the plaintiffs have pled sufficient facts to establish a plausible claim against the Fayette Board. Title IX states that: "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX may be enforced by "an implied private

right of action" and "monetary damages are available in the implied private action."   *Carroll K. v. Fayette Cnty. Bd. of Educ.*, 19 F. Supp. 2d 618, 621 (S.D. W. Va. 1998).

A school may be liable under Title IX for student-on-student harassment in certain circumstances.   *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639 (1999).   Specifically, the U.S. Supreme Court has held that a school may be liable in cases of student-on-student harassment "where the [school] is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority."   *Id*. at 646-47.   The student-on-student harassment must be "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."   *Id*. at 651.   "[F]unding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."   *Id*. at 650.   In sum, to establish a claim under Title IX for student-on-student harassment against a school district, the plaintiff must demonstrate that the school district:   (1) "had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit,' and (5) the district was deliberately indifferent to the harassment."   *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

In this case, the Fayette Board asserts that the plaintiffs failed to establish a claim against the Department under Title IX.   The factual allegations against the Fayette Board mirror those against the Department.   The Complaint alleges that B.E. was sexually assaulted and raped while at Mount Hope High School and asserts that the Fayette Board's and the other defendants' actions before and after the attack violated Title IX.   (Compl. [Docket 1], at 6-7.)   As detailed in the companion Memorandum Opinion and Order on the Department's Motion to Dismiss, the Complaint alleges that the attack occurred in "a room commonly used by students . . . to engage in sexual acts, and that officials at Mount Hope had received "actual notice" that one or more of B.E.'s alleged attackers "had exhibited misconduct in school and also exhibited and engaged in predatory and sexual behavior towards women in general and female students in particular."   (*Id.* at 6.)   The plaintiffs claim that the defendants failed to properly supervise the school grounds, which contributed to the attack.   (*Id.* at 7.)   After the alleged attack occurred, the Complaint alleges that the defendants failed to recognize the alleged attack on B.E. and "failed to take prompt and effective remedial action calculated to prevent reoccurrence of the act and to set forth a safe school environment" in compliance with Title IX.   (*Id.*)   The defendants also intentionally failed "to protect Plaintiff B.E. from further harassment and humiliation."   (*Id.* at 13.)   As a result of the attack and the defendants' alleged failure to take remedial action, the plaintiffs claim that B.E. could not return to her classes and had to enroll in another school district.   (*Id.* at 8.)   The court **FINDS** that these factual allegations are sufficient to allow the court to draw a reasonable inference that the Fayette Board is liable under Title IX.   *See Iqbal*, 129 S. Ct. at 1949-50. Accordingly, the Fayette Board's Motion to Dismiss as to the plaintiffs' Title IX claim is **DENIED**.

B.      *Claims Against Mike Hutchins, Leah Hutchins, Linda Nevi, and Bo Morrison*

In the following section, the court discusses the claims against Mike Hutchins, Leah Hutchins, Linda Nevi, and Bo Morrison in their official capacities and in their individual capacities.   First, the court discusses the federal claim against those defendants in the official capacities and then the court examines the state law claims against those defendants in their official capacities.   Second, the court reviews the federal claim against the defendants in their individual capacities and then reviews the state law claims against the defendants in their individual capacities.

1.      *Official Capacity Claims*

a.      *§ 1983 Claim*

The plaintiffs have brought a claim pursuant to 42 U.S.C. § 1983 against Mike Hutchins, Leah Hutchins, Bo Morrison, and Linda Nevi in their official capacities.   Claims against an official in his official capacity are treated as claims against the entity.   *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   Thus, the court treats the plaintiffs' claims against the individual defendants in their official capacities as claims against the Fayette Board.

As discussed above, the Fayette Board is an arm of the state because the State Board took it over and is entitled to Eleventh Amendment immunity.   This Eleventh Amendment immunity bars the § 1983 claim against the Fayette Board.   Accordingly, the court **GRANTS** the Motion to Dismiss as to the § 1983 claim against Mike Hutchins, Leah Hutchins, Bo Morrison, and Linda Nevi in their official capacities.

b.      *State Law Claims*

The plaintiffs have also brought state law claims against the individual defendants in their official capacities. The individual defendants have moved to dismiss those claims asserting that the claims are redundant. (Mem. Supp. Defs.' Mot. to Dismiss [Docket 18], at 8.)

In this case, the plaintiffs have brought their state law claims against the individual defendants in their official capacities and against the Fayette County Board of Education. Courts in this district have stated that "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *See, e.g.*, *Tofi v. Napier*, No. 2:10-cv-1121, 2011 WL 3862118, at *3 n.1 (S.D. W. Va. Aug. 31, 2011) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). The claims against the individual defendants in their official capacities are claims against the Fayette County Board of Education. *See id*. Because the plaintiffs have brought the same state law claims against the Fayette Board, the official capacity claims against the individual defendants are redundant. Accordingly, the individual defendants' Motion to Dismiss is **GRANTED** as to the state law official capacity claims.

### 2. *Individual Capacity Claims*

#### a. *§ 1983 Claim*

The plaintiffs have brought a § 1983 claim against the defendants in their individual capacities. A § 1983 claim is not an independent claim for relief but is a vehicle by which a plaintiff can bring suit against a state for violations of federal or constitutional laws. 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured *by the Constitution and laws*") (emphasis added). In the § 1983 count of the Complaint, the plaintiffs did not identify or allude to

- 12 -

a federal or constitutional law that the plaintiffs allegedly violated and for which the plaintiffs are

bringing suit pursuant to § 1983.   The plaintiffs simply allege a violation of § 1983.   Thus, the

plaintiffs failed to establish their § 1983 claim because they failed to identify or describe the

federal or constitutional law which the individual defendants allegedly violated.   Accordingly, the

court **GRANTS** the defendants' Motion to Dismiss as to the § 1983 claims against the individual

defendants in their individual capacities.

b.      <em>State Law Claims</em>

The plaintiffs have also brought state law claims against Mike Hutchins, Leah Hutchins,

Bo Morrison, and Linda Nevi in their individual capacities for negligent supervision; negligence;

willful, wanton, and reckless conduct; intentional infliction of emotional distress; and negligent

infliction of emotional distress.   The individual defendants have moved to dismiss these claims.

The court will address each of these claims in turn.

i.      <em>Negligent Supervision Claim</em>

The defendants Mike Hutchins and Leah Hutchins have moved to dismiss the plaintiffs'

negligent supervision claim under Rule 8, asserting that the plaintiffs failed to state facts such that

there is a reasonable inference that they are liable for negligence.   (Mem. Supp. Mot. to Dismiss

[Docket 18], at 8.)   In response, the plaintiffs allege that they have pled sufficient facts to create a

reasonable inference that Mike and Leah Hutchins are liable for negligent supervision.   (Pls.'

Resp. to Defs.' Mot. to Dismiss [Docket 21], at 9-10.)   Specifically, the plaintiffs claim that Mike

and Leah Hutchins were responsible "for the implementation and execution [of] any and all safety

policies and procedures, oversaw all activities that took place on school grounds and were

responsible for the safety of staff and students."   (*Id*. at 10.)

- 13 -

To establish a claim for negligence, a plaintiff must demonstrate that "the defendant's failure to perform a duty owed to the former proximately result[ed] in injury[.]"  *Moore By & Through Knight v. Wood Cnty. Bd. of Educ.*, 200 W. Va. 247, 251-52 (1997).   Specifically, the plaintiffs are required to show that:   (1) the defendants owed a duty to B.E. while she was on school grounds after school hours, (2) the defendants breached their duty, and (3) the breach of such duty was the proximate cause of the plaintiffs' injuries.   *See id.* at 252.

In this case, the plaintiffs have alleged sufficient facts against Mike and Leah Hutchins to establish a plausible claim for negligent supervision.   The plaintiffs alleged in the Complaint that Mike and Leah Hutchins were principals at Mount Hope High School and that officials at the school had received "actual notice" of predatory sexual behavior by male athletes at the school. (Compl. [Docket 1], at 6.)   The Complaint also alleges that the room in which B.E. was allegedly assaulted was a room "commonly used by students at Mount Hope High School to engage in sexual acts."   (*Id.*)   Finally, the Complaint alleges that the defendants "failed to properly supervise students and/or to provide a safe school environment, resulting in Plaintiff B.E.'s rape and physical and sexual assault on school grounds."   The court **FINDS** that if the facts stated in the Complaint are accepted as true, the plaintiffs state a claim for negligent supervision that is plausible on its face.   Accordingly, the defendants Mike Hutchins and Leah Hutchins's Motion to Dismiss is **DENIED** as to the negligent supervision claim.

ii.      *Negligence Claim*

The plaintiffs have also brought a claim against the individual defendants for negligence. (Compl. [Docket 1], at 9-10.)   The plaintiffs assert that the defendants' negligent conduct following the assault resulted in a "threatening" and "unsafe" environment at Mount Hope High

- 14 -

School, which forced B.E. to enroll in another school district. The defendants Mike Hutchins, Leah Hutchins, Bo Morrison, and Linda Nevi have moved to dismiss the negligence claim for failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 8. (Mem. Supp. Defs.' Mot. to Dismiss [Docket 18], at 9.) The individual defendants claim that the plaintiffs failed to identify specific negligent acts by the defendants and assert that the plaintiffs only "state that the Defendants engaged in 'negligent conduct.'" (*Id*.)

The plaintiffs allege in their Complaint that the individual defendants had actual notice of the boys' predatory sexual behavior. (Compl. [Docket 1], at 6.) It is also alleged in the Complaint that each of the individual defendants held supervisory positions at the school, including positions as principals, teachers, and coaches. (*Id*. at 4.) The plaintiffs also allege that the plaintiffs had "actual knowledge" of the attack on B.E. and "failed to take prompt and effective remedial action calculated to prevent reoccurrence of the act" and "to set forth a safe school environment." (*Id*. at 7.) Thus, the court **FINDS** that the plaintiffs have alleged sufficient facts to establish a plausible claim for negligence against the individual defendants. Accordingly, the court **DENIES** the individual defendants' Motion to Dismiss as to the negligence claim.

iii.    *Intentional Infliction of Emotional Distress Claim*

The plaintiffs have also brought a claim for intentional infliction of emotional distress ("IIED") arising out of the alleged incident. The plaintiffs claim that the defendants "engaged in willful, wanton, and reckless conduct" and that these actions resulted in the plaintiffs suffering "severe emotional injuries, distress and discomfort." (Compl. [Docket 1], at 11.) The defendants have moved to dismiss the IIED claim, asserting that the Complaint does not contain any facts indicating that the defendants' conduct was extreme and outrageous. (Defs.' Mem.

Supp. Mot. to Dismiss [Docket 18], at 12.)   In response, the plaintiffs argue that the defendants

acted outrageously when their alleged "acts and omissions . . . prevented B.E. from returning to

school in Fayette County."   (Pls.' Resp. to Defs.' Mot. to Dismiss [Docket 21], at 13.)

The West Virginia Supreme Court of Appeals ("WVSCA") discussed the tort of IIED in

*Travis v. Alcon Laboratories, Inc.*, stating:

> The four elements of the tort can be summarized as: (1) conduct by the defendant
> which is atrocious, utterly intolerable in a civilized community, and so extreme and
> outrageous as to exceed all possible bounds of decency; (2) the defendant acted
> with intent to inflict emotional distress or acted recklessly when it was certain or
> substantially certain such distress would result from his conduct; (3) the actions of
> the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional
> distress suffered by the plaintiff was so severe that no reasonable person could be
> expected to endure it.

202 W. Va. 369, 375 (1998).   The WVSCA has emphasized that the conduct at issue must be so

extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."   *Id*.   (quoting *Tanner v. Rite Aid of

W. Va.*, 194 W. Va. 643, 651 (1995)).   "[C]onduct that is merely annoying, harmful of one's rights

or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct."

*Courtney v. Courtney*, 186 W. Va. 597, 602 (1991).

In this case, the plaintiffs failed to allege facts showing that the defendants acted in an

extreme or outrageous manner that would meet the standard for an IIED claim.   The defendants'

alleged conduct detailed in the Complaint demonstrates a possible failure to act and creates a

plausible claim for negligence.   But the plaintiffs failed to plead any facts showing that the

defendants' acted in a way that was so extreme and outrageous that it would exceed the bounds of

decency in a civilized society.   The facts alleged by the plaintiffs, if true, could establish a

plasuible claim for negligence.   However, the plaintiffs have not alleged any acts of the individual

defendants that could show that the individual defendants intended to inflict emotional distress on

B.E. or that they acted recklessly when it was certain that extreme emotional distress would result.

Thus, the court **FINDS** that the plaintiffs have not established a plausible claim for intentional

infliction of emotional distress.   Accordingly, the court **GRANTS** the individual defendants'

Motion to Dismiss as to the intentional infliction of emotional distress claim.

iv.      *Negligent Infliction of Emotional Distress Claim*

Finally, the plaintiffs have brought a claim against the individual defendants for negligent

infliction of emotional distress (NIED).   The defendants moved to dismiss this claim stating that

dismissal is proper because Sharon and Stephen Endicott, who are B.E.'s parents, did not witness

the alleged incident involving B.E.   (Mem. Supp. Defs.' Mot. to Dismiss [Docket 18], at 11-12.)

The defendants point to cases holding that to establish a claim for negligent infliction of emotional

distress, the plaintiff must establish his presence at the location of the injury and be conscious of

the fact that the victim is being injured.   (*Id*. at 10.)   The defendants claim that the plaintiffs have

not established that either Sharon or Stephen Endicott witnessed the alleged incident.   In

response, the plaintiffs assert that they have pled sufficient facts to establish B.E.'s NIED claim.

(Pls.' Resp. to Defs.' Mot. to Dismiss [Docket 21], at 12.)   The plaintiffs also allege that they have

established Sharon and Stephen Endicott's NIED claims because the Endicotts "witnessed B.E.

undergo an invasive physical and sexual assault assessment" and this assessment made the

Endicotts "sensorially aware" of B.E.'s alleged injuries.   (*Id*.)

West Virginia allows a plaintiff to recover for NIED.   The plaintiff's claim for NIED

"after witnessing a person closely related to the plaintiff suffer critical injury or death as a result of

the   defendant's   negligent   conduct,   is   premised   upon   the   traditional   negligence   test   of

foreseeability." *Heldreth v. Marrs*, 188 W. Va. 481, 482 syl. pt.2 (1992). To prove a claim for NIED, the plaintiff must establish that "his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death." *Id*. The factors considered when determining if the plaintiff's serious emotional injury was reasonably foreseeable to the plaintiff are: (1) "whether the plaintiff [is] closely related to the injury victim; (2) whether the plaintiff [is] located at the scene of the accident and is aware that it is causing injury to the victim; (3) whether the victim is critically injured or killed; and (4) whether the plaintiff suffers serious emotional distress." *Id*. Additionally, West Virginia courts have emphasized that "a plaintiff in a negligent infliction of emotional distress action must be present at the scene of the injury-producing event at the time it occurs and must be aware that it is causing injury to the victim. In other words, the plaintiff must have a 'sensory observation' of the injury to the victim." *Stump v. Ashland, Inc.*, 201 W. Va. 541, 547 (1997).

In this case, Sharon and Stephen Endicott were not present at the scene of the injury-producing event. The injury-producing event was the alleged attack on B.E. that occurred at Mount Hope High School. The Complaint does not allege that Sharon or Stephen Endicott were present at Mount Hope High School at the time of the alleged attack; nor does it allege that they arrived at the high school shortly after the attack occurred. The Complaint only alleges that Sharon and Stephen Endicott had a "sensory observation" of the attack two days later. *See id*. Thus, the court **FINDS** that the Complaint does not contain sufficient factual matter to establish that Sharon and Stephen Endicott have plausible claims for NIED. Accordingly, the court

**GRANTS** the individual defendants' Motion to Dismiss as to Sharon and Stephen Endicott's NIED claims.

        C.       *Claims Against Mount Hope High School*

Finally, the defendants have moved to dismiss the claims against Mount Hope High School, asserting that Mount Hope is not legal entity.  (Mem. Supp. Defs.' Mot. to Dismiss [Docket 18], at 12.)   The defendants claim that Mount Hope is not capable of being sued because it is not a legal entity, but is only "a school within the Fayette County school system under the supervision of the Fayette County Board and the State Board."   (*Id*.)   The plaintiffs do not dispute the plaintiffs' assertions but argue that the defendants have not "provided any information from Defendants as to the structure of its school system."   (Pls.' Resp. to Defs.' Mot. to Dismiss [Docket 21], at 13.)

While courts in West Virginia have not addressed whether a high school is a legal entity capable of being sued, courts in other jurisdictions have found that high schools are not legal entities.   In explaining the reasoning behind this decision, one court stated that "a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity."   *Muller v. St. Tammany Parish*, No. 09-3362, 2010 WL 2464802, at \*6 (E.D. La. Apr. 28, 2010).   In this case, Mount Hope High School does not function independently and is subject to the control of the Fayette County Board of Education.   *See* W. VA. CODE § 18-5-13; *State ex rel. Dilley v. W. Va. Pub. Emps. Ret. Sys.*, 180 W. Va. 24, 26 ("[T]he board is given broad authority to control and manage the schools . . . .  The board's powers include, but are not limited to, the power to:   establish

- 19 -

schools; close schools; employ teachers and assign them; employ other personnel; and, make rules and regulations for the government of the schools."). Additionally, the Fayette Board is a public corporation and is also classified as a political subdivision of the state for purposes of the West Virginia Tort Claims Act. *See* W. VA. CODE §§ 18-5-5, 29-12A-3; *see also Dilley*, 180 W. Va. at 26. Thus, the court **FINDS** that Mount Hope High School is not a legal entity that can be sued because it is not an independent body apart from the Fayette County School District. Accordingly, the court **GRANTS** the defendants' Motion to Dismiss as to the claims against Mount Hope High School.

## IV.     Conclusion

For the reasons discussed above, the defendant Fayette County Board of Education's Motion to Dismiss is **GRANTED in part** as to the state law claims and **DENIED in part** as to the Title IX claim. The defendants Mike Hutchins, Leah Hutchins, Linda Nevi and Bo Morrison's Motion to Dismiss is **GRANTED** as to the claims against them in their official capacity. The claims against Mike Hutchins, Leah Hutchins, Linda Nevi and Bo Morrison in their individual capacity are **GRANTED in part** as to the intentional infliction of emotion distress and negligent infliction of emotional distress claims and **DENIED in part** as to the negligent supervision and negligence claims. The defendant Mount Hope High School's Motion to Dismiss is **GRANTED**. The defendants' Motion to Strike Plaintiffs' Response in Opposition is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       August 17, 2012

- 20 -

Joseph R. Goodwin, Chief Judge